IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO HARRIS, | ) | CASE NO. 1:21 CR 492 |
| | ) | |
| Defendant-Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| | ) | |
| Plaintiff-Respondent. | ) | MEMORANDUM OPINION |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Docket #45.) As set forth in the Government's Response Brief, the factual and procedural background of this case is as follows:

    A.    <u>Offense Conduct and Indictment</u>

Antonio "Tone" Harris was arrested after a controlled buy that led law enforcement to his stash house where he kept methamphetamine and fentanyl, along with a firearm. Specifically, on May 11, 2021, Ashtabula Police Department investigators met with a confidential source ("CS") and completed a controlled purchase of methamphetamine from Harris for $650. (R. 1: Complaint, Page ID 3-4). Investigators took the drugs from the sale from the CS which field tested positive for methamphetamine.

Three days after the CS purchased methamphetamine from Harris, investigators obtained a search warrant for 1402 Gladding Avenue, Ashtabula, Ohio, which investigators believed Harris was utilizing to store and distribute

methamphetamine. (R. 37: *SEALED* PSR, PageID 120). When officers arrived to execute the search warrant, they found the house was unlocked and the only two individuals in the house were two minor children ages 8 and 4. (Id.). The search yielded additional methamphetamine, a large quantity of plastic bags, a loaded Glock 26 handgun, a large zip lock bag containing four tie-off bags with methamphetamine found in a safe, and a plastic bag containing fentanyl. (Id.). The drugs seized from Gladding Avenue were sent to the DEA North Central Laboratory for drug chemistry examination. The laboratory determined the substances possessed by Harris weighed a total of 329.5 grams of actual methamphetamine, and 4.897 grams of fentanyl. (Id.).

On May 24, 2021, Harris was arrested on a federal criminal complaint for violations of 21 U.S.C. 841(a)(1) and (b)(1)(A). (R. 1: Complaint, PageID 3). On June 23, 2021, a federal grand jury indicted Harris in a three-count indictment for possession with intent to distribute methamphetamine and fentanyl, in violation of 21 U.S.C 841(a)(1), (b)(1)(A), and (b)(1)(C). (R. 11: Indictment, PageID 27-28).

B.     Plea

On December 7, 2021, Harris pled guilty to all three counts in the indictment pursuant to a written plea agreement with the government. (R. 34: Plea Agreement, PageID 79-90). As part of the agreement, both parties agreed to recommend that the Court impose a Guidelines sentence within the range of 135 to 168[1] months of imprisonment. (Id., PageID 82-83). Harris and the government also agreed and stipulated that the amount of drugs possessed with the intent to distribute in Count 1 was 273.7 grams of actual methamphetamine, in Count 2 was 55.8 grams of actual methamphetamine, and in Count 3 was 4.897 grams of fentanyl. (Id., PageID 83).

C.     Sentencing

Defense counsel filed a detailed sentencing memorandum, arguing for a low-end Guidelines sentence of 135 months incarceration based on Harris's history and characteristics and acceptance of responsibility. (R. 39: Defendant's Sentencing Memorandum, PageID 143-157). During the sentencing hearing, the Court adopted the Guidelines range as calculated in the plea agreement, concluding that Harris had a total offense level of 31 and a Criminal History

---

[1] The plea agreement contained a clerical error, calculating the Guidelines range as 151 to 188 months imprisonment. During the sentencing hearing, both parties acknowledged the clerical error, and agreed to adopt the correct Guidelines calculation of 135 to 168 months imprisonment. (R. 48: Sentencing Trans., PageID 208-09).

> Category 3, resulting in a Guidelines range of 135 to 168 months. (R. 48: Sentencing Trans., PageID 207). Harris's attorney again argued for a sentence at the low-end of the Guidelines range, while the government requested a mid-range Guidelines sentence based on the severity of the crime and the need to promote respect for the law. (Id., PageID 210, 215). Before pronouncing sentence, the Court discussed the seriousness of fentanyl-related drug crimes and Harris's criminal history—while also noting Harris's "full and complete" acceptance of responsibility and the "very comprehensive Sentencing Memorandum" filed on Harris's behalf. (Id., PageID 208, 217-22). After weighing the appropriate factors, the Court ultimately imposed a low-end Guidelines sentence of 140 months as to Counts 1, 2, and 3, all to run concurrent with each other. (R. 43: Judgement, PageID 165). The Court closed the sentencing hearing by suggesting that Harris "thank [his] lawyers," as "they did a good job for [him]." (R. 48: Sentencing Trans., PageID 224).
>
> Harris did not appeal.

(Docket #55 at pp. 1-3.)

On April 18, 2023, Petitioner filed his Motion to Vacate, arguing ineffective assistance of counsel (Docket #45). Specifically, Petitioner argues Counsel failed to appropriately investigate and challenge the purity of the methamphetamine and failed to appropriately investigate his Criminal History Category and a Career Offender Sentencing Enhancement. Further, Petitioner argues that Counsel's recommendation that he waive the right to a preliminary examination prejudiced his understanding of the evidence against him prior to his Guilty Plea – alleging that lab errors prevented examining "the drugs in evidence as to their nature and/or purity" – and, therefore, that his Guilty Plea was not entered knowingly and voluntarily. Finally, Petitioner asserts that Counsel's assistance was ineffective, and his Plea was not entered knowingly and voluntarily, because Counsel advised him to plead guilty to "defective charges."

On June 16, 2023, the Government filed its Response Brief (Docket #55), arguing that Petitioner has offered nothing of substance to support his claims; failed to establish that

-3-

Counsel's performance was deficient; and, failed to prove by a preponderance of evidence that his Constitutional rights were violated or infringed. (Docket #55.)

## Discussion

Title 28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established the requirements for a claim ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In order to show that his attorney's performance was deficient, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In order to satisfy the requirement of prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty Plea, "the defendant must show that there is a

-4-

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, Paragraph a of syllabus (1985).

"A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked . . . And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Petitioner did not file an appeal in this case and his Plea was made knowingly and voluntarily, as evidenced by the record in this case. At the time of his Plea, Petitioner indicated, under oath, that he was not under the influence of drugs or alcohol; understood the proceedings; and, indicated he sufficiently discussed the case with Counsel, including the evidence, potential challenges, and defenses. Petitioner indicated he understood the factual basis for his Plea; the stipulated drug amounts; and, the recommended range of 135 to 168 month under the Sentencing Guidelines. The Court accepted Petitioner's Guilty Plea, finding it to be knowing and voluntary. Petitioner expressed no hesitation; did not claim that he was innocent; did not suggest that he was unsure about whether to plead guilty; and, did not indicate that he was coerced, pressured or induced to plead guilty. The Court thoroughly questioned Petitioner in open court and his responses during his Plea Hearing contradict his claim that his Plea was not knowingly, voluntarily or intentionally made. Counsel's representation throughout the pendency of this case was both reasonable and effective and Petitioner has failed to demonstrate Counsel's performance was deficient.

Furthermore, the issues raised by Petitioner are contradicted by the Record in this case. First, the drugs seized from Gladding Avenue were confirmed through laboratory testing to be 329.5 grams of actual methamphetamine and 4.897 grams of fentanyl. Petitioner agreed and stipulated to these amounts in both his Plea Agreement and during his Change of Plea Hearing.

(Plea Agreement at p. 86.) Petitioner has failed to set forth adequate facts and evidence to substantiate his claim that Counsel should have challenged the purity of the methamphetamine. Second, Petitioner did not receive a Career Offender Sentencing Enhancement. Petitioner's prior criminal convictions resulted in a subtotal Criminal History Score of four, and he received an additional two points pursuant to U.S.S.G. § 4A1.1(d) because he committed the instant offense while on probation, for a total Criminal History Score of six. Accordingly, his argument that Counsel failed to adequately investigate and research his Criminal History – which is premised upon a Career Offender Enhancement which he did not receive – is meritless. Finally, there is no evidence that the charges against Petitioner were "defective."

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required

under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

Petitioner has failed to make a substantial showing of the denial of a Constitutional right and, accordingly, the Court declines to issue a Certificate of Appealability.

## Conclusion

For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255 (Docket #45) is DENIED. The Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: August 7, 2023